**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| PERSIO M.[1],<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendants. | Civil No. 3:26-cv-00101 (MEG)<br><br>September 18, 2026 |

**RULING ON PENDING MOTIONS**

Plaintiff Persio M. appeals the decision of the Commissioner of Social Security ("Commissioner"), rejecting his application for Title II Disability Insurance Benefits (DIB). ECF Nos. 1, 20. He seeks an order reversing the Commissioner's decision and/or an order remanding the case for further proceedings. ECF No. 20. The Commissioner moves for an order affirming that decision. ECF No. 25.

For the reasons that follow, I **GRANT** the pending Motion to Reverse the Decision of the Commissioner and Remand (ECF No. 20) and **DENY** the pending Motion for an Order Affirming the Decision of the Commissioner (ECF No. 25).

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 10, 2023, Plaintiff filed an application for DIB benefits under Title II, alleging a disability onset date of March 24, 2022. R. 109. He claimed he could not work due to left knee and left ankle problems, lower back pain, and right shoulder injury. R. 136. His application was

[1] Pursuant to the January 8, 2021 Standing Order, Plaintiff will be identified solely by first name and last initial, or as "Plaintiff," throughout this opinion. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

denied initially on June 2, 2023, and upon reconsideration on February 14, 2024. R. 133-136; 139-141. On September 16, 2024, the ALJ held a telephone hearing upon consent from Plaintiff. R. 84-107; 162-63.

On January 3, 2025, the ALJ issued an unfavorable decision. R. 60-83. ALJs are required to follow a five-step sequential evaluation process in adjudicating Social Security claims and ALJ John Ramos' written decision followed that format. *Id.* At Step One, he found that Plaintiff has not engaged in substantial gainful activity since March 24, 2022, his alleged onset date, and that he meets the insured status requirements of the Social Security Act through March 31, 2028. R. 63. At Step Two, he found that Plaintiff suffers from the severe impairments of "obesity, lumbar degenerative disc disease, right shoulder degenerative joint disease and left knee degenerative joint disease," and that his "left ankle sprain, right knee degenerative joint disease, headaches, and vertigo," were non-severe. R. 63-64. At Step Three, he concluded that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the "Listings" – that is, the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 65. He then determined that, notwithstanding his impairments, Plaintiff retained the residual functional capacity to:

> [P]erform light work as defined in 20 C.F.R. § 404.1567(b) except that he must not work at unprotected heights or around vibration or dangerous machinery. He is okay for personal automobile driving. He can occasionally bend, balance, twist, squat, kneel, crawl and climb. However, he must not climb ladders, ropes and scaffolds nor operate left foot controls.

*Id.* At Step 4, the ALJ found that Plaintiff was not capable of performing past relevant work as a corrections officer because this work requires the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. § 404.1565 and 416.965). R. 76-77. Finally, at Step Five, relying on the testimony of a vocational expert ("VE"), the ALJ found that, in addition to past relevant work, considering Plaintiff's age, education, work experience, and

residual functional capacity, he is capable of performing other work, such as a press operator, housekeeper cleaner, and racker, that exists in significant numbers in the national economy. R. 77-78. Accordingly, the ALJ determined that Plaintiff was not disabled from March 24, 2022, the alleged onset date, through January 3, 2025, the date of the decision. R. 78.

***Appeal to the Appeals Council and Additional Evidence***

Plaintiff appealed to the Appeals Council and submitted additional medical records from Orthopaedic Specialty Group dated from April 8, 2025 to May 28, 2025, and August 13, 2025 to August 25, 2025; a medical exam from Connecticut Orthopaedics dated June 30, 2025; a Disability Retirement decision from the State of Connecticut Medical Examining Board dated June 12, 2025; a physical therapy patient visit record from Orthopedic Specialty Group and Amity Physical Therapy, LLC dated May 13, 2025 ; and four work notes from Orthopaedic Specialty Group dated April 8, 2025, April 9, 2025, April 30, 2025, and May 28, 2025. R. 8-49.

The April 9, 2025 treatment note from Dr. Stanton included a diagnosis of "left ankle peroneal tendon strain." R. 33. The treatment note discussed Plaintiff's ongoing treatment by Dr. Probasco for the strain, and Dr. Stanton stated Plaintiff is "capable of a sedentary job, which will allow him to stand perhaps 10-15% of the time" to "minimize discomfort in the involved body parts." R. 33-34. Dr. Stanton also provided a work note saying Plaintiff could return to work if it was "light duty-primarily sedentary with limited walking, kneeling, climbing." R. 47. On April 30, 2025, a treatment note from Dr. Probasco stated Plaintiff's left ankle was "relatively stable" with pain and the tenderness of his peroneal tendons in zones 1, 2, and 3. R. 36. Dr. Probasco also said the ankle has been "persistently painful" and ordered an MRI be taken to "further evaluate the status of the peroneal tendons as well as lateral ankle ligament complex" as the "conservative treatment" was not helping Plaintiff's pain. *Id.* Dr. Probasco provided a work note which stated Plaintiff could return to sedentary work, specifying he could do "[s]itting work only." R. 48. The

MRI, taken on May 9, 2025, showed "split partial tearing of the peroneal brevis tendon with tendinopathy and likely some peroneal peritendinitis" as well as "mild tendinopathy" in Plaintiff's Achilles tendon.[2] R. 39.

Plaintiff attended physical therapy for his left leg on May 13, 2025. R. 41. The physical therapist noted tenderness near the peroneal tendon as well as stiffness at the left foot and ankle. *Id.* The physical therapist also noted some progress in Plaintiff's long-term goals, stating he had reached "approximately 50% progress" and might continue to improve with more physical therapy. R. 42. In a May 28, 2025 treatment note, Dr. Probasco stated Plaintiff would be seeking surgery for the tear, and that Plaintiff reported continuing to feel similar pain. R. 43-45. On June 30, 2025, Dr. Ferrucci performed a Respondent Medical Exam assessment on Plaintiff. R. 21. Dr. Ferrucci stated that Plaintiff reported his left ankle injury occurred from the same incident that caused his other injuries. *Id*. Plaintiff stated he slipped while carrying a heavy fan at work, which resulted in his injuries, including the one to his left ankle. *Id.* Plaintiff also stated the pain was "substantial" and "stable," and "limits his activity." *Id.* Dr. Ferrucci noted he had an "antalgic gait," and that the "affected area" was swollen and recommended surgery. R. 22-23.

In an Operative Report, Dr. Probasco stated Plaintiff had surgery on August 14, 2025. R. 13. The surgery included a left ankle peroneal tendon tenosynovectomy/debridement, left ankle arthroscopy with debridement, left ankle Brostrom, and left ankle bone marrow aspirate

---

[2] "Peroneal tendon disorders are a common source of lateral hindfoot pain; however, the diagnosis can be missed initially. In one study, only 60% of peroneal tendon disorders were accurately diagnosed at the first clinical evaluation. When untreated, peroneal tendon disorders can lead to persistent lateral ankle pain and substantial functional disability." Constantine A. Demetracopoulos, MD, et. Al., *Long-Term Results of Debridement and Primary Repair of Peroneal Tendon Tears*, 35 American Orthopaedic Foot & Ankle Society 252 (2013) (https://doi.org/10.1177/1071100713514565).

concentrate. *Id.* In an August 25, 2025 post-operation treatment note, Dr. Probasco said Plaintiff was "doing well," and would follow up in four weeks. R. 16-17.

The Appeals Council denied Plaintiff's request for review on November 18, 2025, making the ALJ's unfavorable decision final. R. 1. The Appeals Council said the "Administrative Law Judge decided your case through January 3, 2025. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before January 3, 2025." *Id.* Plaintiff sought judicial review of the Commissioner's decision on January 1, 2026. ECF No. 1.

## II. APPLICABLE LEGAL STANDARDS

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'" *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)). To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)). At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ." *Id.* At Step Three, the ALJ evaluates whether the claimant's disability "meets or equals the severity" of one of the "Listings" – that is, the specified impairments listed in the regulations. *Id.* At Step Four, the ALJ uses a residual functional capacity ("RFC") assessment to determine whether the claimant can perform any of his or her "past relevant work." *Id.* At Step Five, the ALJ addresses "whether there are significant

numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience." *Id.* The claimant bears the burden of proof at Steps One through Four. *Id.* At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). Its role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error. "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks and citations omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . .") (citations omitted). Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and citations omitted). When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

An ALJ does not receive the same deference if he has made a material legal error. In other words, district courts do not defer to the Commissioner's decision where "an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks and citation omitted). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## III. DISCUSSION

Plaintiff moves to reverse the decision of the Commissioner or for remand for further proceedings. ECF No. 20. Plaintiff argues as follows: (1) The ALJ ignored the side effects of Plaintiff's Gabapentin medication when he said Plaintiff was "okay for personal automobile driving," ECF No. 21 at 8-10; (2) the ALJ's assertion that Plaintiff was "okay for personal automobile driving" was stated in "vague, non-standard Residual Functional Capacity ('RFC') language", *Id.* at 10-12; (3) the RFC contained an internal contradiction by forbidding him from working around vibration yet allowing Plaintiff to drive for personal reasons, *Id.* at 13-14; (4) the Step Five determination was "tainted" as a result and included jobs that involved vibrating machines, *Id.* at 14-17; and (5) the ALJ did not properly credit Plaintiff's testimony that he can only stand for fifteen to twenty minutes at a time, despite including other limitations in the RFC related to Plaintiff's leg pain, *Id.* at 19-23.

### A. Supplementary Evidence Submitted to the Appeals Council

The failure to consider supplemental evidence submitted to the Appeals Council requires reversal and remand.[3] When a Plaintiff submits supplementary evidence for consideration by the

[3] Plaintiff does not argue the Appeals Council should have been required to review the additional evidence. However, courts "review the administrative record *de novo* to determine

Appeals Council, the Appeals Council reviews the case as long as the evidence is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Plaintiff must also show "good cause" for not submitting the evidence earlier. § 404.970(b). A Plaintiff demonstrates good cause when "some . . . unusual, unexpected, or unavoidable circumstance beyond [the Plaintiff's] control prevented [the Plaintiff] from informing [the Commissioner] about or submitting the evidence earlier." § 405.970(b)(3). When an Appeals Council denies review of an ALJ's decision, as happened here, "the new evidence submitted to the Appeals Council . . . becomes part of the administrative record for judicial review." *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). Further, courts within the Second Circuit have held that "the Appeals Council's failure to consider evidence that meets the criteria of 20 C.F.R. § 404.970(a)(5) and § 416.1470(a)(5) warrants remand." *Velez v. Berryhill*, No. 3:18-CV-01024 (SALM), 2019 WL 2052013, at *7 (D. Conn. May 9, 2019) (citing cases). Plaintiff's evidence meets the criteria of 20 C.F.R. § 404.970(a)(5) and thus warrants remand.[4]

Most of the supplemental evidence Plaintiff submitted is "new." When the additional evidence "did not exist at the time of the ALJ's hearing, there is no question that the evidence is

---

whether . . . the Commissioner applied the correct legal standard." *Pollard*, 377 F.3d at 188 (citations and quotation marks omitted).

> Where an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ.

*Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (citations and quotation marks omitted). "Failure to apply the correct legal standards is grounds for reversal." *Pollard*, 377 F.3d at 189 (citations and quotation marks omitted).

[4] The regulations governing Title II and Title XVI are located at 20 C.F.R. Parts 404 and 416, respectively.

'new.'" *Pollard*, 377 F.3d at 193; *Vasquez-Ortiz v. Apfel*, 48 F. Supp. 2d 250, 258 (W.D.N.Y. 1999). To be new, the evidence must also not be "cumulative" or "duplicative." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) ("Tirado 1") (internal citations and quotations omitted); *Horn v. Comm'r of Soc. Sec.*, No. 13-CV-1218 (NGG), 2015 WL 4743933, at *20, n.6 (E.D.N.Y. Aug. 10, 2015) (noting that both phrases "cumulative" and "duplicative" have been used by various courts without distinguishing the terms); Evidence is "merely cumulative" when it is "almost identical to . . . earlier findings." *Vasquez-Ortiz*, 48 F. Supp. 2d at 258; *Horn*, 2015 WL 4743933, at *20, n.6 (stating evidence is cumulative when "the information it contains is already provided to some extent elsewhere in the administrative record."); *Flanders v. Chater*, No. 93 CIV. 5671 (SAS), 1995 WL 608287, at *7 (S.D.N.Y. Oct. 17, 1995) (finding that, where evidence "[gave], for the first time, objective evidence" regarding the severity of the plaintiff's symptoms, the evidence was not cumulative). Evidence is duplicative when it is a "facsimile of a document already contained in the original administrative record considered by the ALJ." *Horn*, 2015 WL 4743933, at *20, n.6.

Plaintiff's supplemental evidence concerning treatment notes for a doctor's visit for his back and the State of Connecticut Medical Examining Board's finding Plaintiff is continually entitled to service-connected disability retirement are not new. While the treatment note regarding Plaintiff's back was created after the ALJ's decision was released, the information contained within is cumulative of other information throughout the record. The note states Plaintiff's current course of treatment is working well for him, and while there is still some pain, he is "happy with his improvements." R. 30. He rated his pain "6/10." R. 32. In a treatment note from July 17, 2024, Dr. Saba noted Plaintiff "did very well" after an injection, but the pain was returning, and he would continue his medication and receive another injection. R. 650. Plaintiff rated his pain greater than "6/10." *Id.* The information contained in each treatment note is virtually the same, and thus the

treatment note regarding Plaintiff's back is not new. Similarly, the State of Connecticut Medical Examining Board Decision is cumulative of a previous decision already in the record. R. 26, 641. In May of 2024, the Board determined Plaintiff was "permanently unable to perform the duties of his job description" and "his application for entitlement to service connected disability retirement" was approved. R. 641. In June of 2025, the Board approved Plaintiff for "continued entitlement to Service-Connected Disability Retirement" and reviewed Plaintiff's new diagnosis of a peroneal tendon tear. R. 26. While the 2025 approval encompassed Plaintiff's new diagnosis, it is "almost identical to . . . earlier findings." *Vasquez-Ortiz*, 48 F. Supp. 2d at 258. Thus, the April 9, 2025, treatment note and the Connecticut Medical Examining Board Decision are not "new" evidence.

However, Plaintiff's supplemental evidence concerning his left ankle and subsequent peroneal strain and tear diagnosis is "new." This includes: all treatment notes from doctor's visits concerning his left ankle (R. 16-18, 36-38, 43-45); a treatment and work note from Dr. Stanton following a peroneal tendon strain diagnosis (R. 33-34, 47); a physical therapy Patient Visit Record (R. 41-42); two work notes from Dr. Probasco (R. 48-49); an MRI report (R. 39-40); a Respondent Medical Exam (R. 21-23); a pre-operative report detailing the planned surgery on Plaintiff's left ankle (R. 9-12); and an operative report (R. 13-15). All of these documents were generated after the decision date, and thus are all new. Further, they each concern Plaintiff's new diagnoses of peroneal tendon strain and, later, tear in his left ankle. There is no other evidence in the record detailing these diagnoses, nor did any treating physicians consider the impact such diagnoses would have on Plaintiff's work limitations. Thus, this evidence is neither cumulative nor duplicative, and is new evidence.

Plaintiff's new evidence is also material. Evidence is material when it is "both relevant to the claimant's condition during the time period for which benefits were denied and probative." *Tirado*, 842 F.2d at 597. There must also be "a reasonable possibility that the new evidence would

have influenced the Secretary to decide claimant's application differently." *Id.* (citing *Szubak v. Sec'y of Health & Hum. Servs.*, 745 F.2d 831, 833 (3d Cir. 1984)).

Evidence that is created after the decision is rendered can still be relevant to the time period at issue, which is prior to the hearing decision date. *Pollard*, 377 F.3d at 193 (finding evidence generated after the decision date relevant to the time period when it "directly support[ed]" earlier testimony); *McIntire v. Astrue*, 809 F. Supp. 2d 13, 21 n. 9 (D. Conn. 2010). "An implicit materiality requirement is that the new evidence . . . not concern evidence of a later-acquired disability or the subsequent deterioration of the previously non-disabling condition." *Szubak*, 745 F.2d at 833. Plaintiff's new evidence concerns the relevant time period. Plaintiff has complained of pain in his left ankle since 2022 but was only diagnosed with a sprain. R. 462, 489, 503, 518, 522, 649. The new diagnosis relates to the pain complained of during the relevant time period. R. 21, 23. It also indicates the impairment was not acquired after the decision date, or that it deteriorated to the point of disability only after the decision date.

New evidence is also relevant when it "sheds considerable new light on the seriousness of [a claimant's] condition." *Lisa v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 940 F.2d 40, 44 (2d Cir. 1991) (internal citations and quotations omitted). "Evidence of surgical operations performed after a denial of benefits have consistently been held relevant to whether the claimants were previously disabled." *Tirado v. Bowen*, 705 F. Supp. 179, 182 (S.D.N.Y. 1989) ("Tirado II") (citing to cases in the Fourth and Seventh Circuits). The diagnosis and eventual surgery are objective medical evidence for the first time of an ongoing impairment in Plaintiff's ankle. R. 13-15, 39-40. Thus, Plaintiff's new evidence is relevant to the pre-decision period.

Courts within the Second Circuit have determined that new evidence created up to a year after the decision date is material. *See Carreto v. Colvin*, No. 15-CV-417 (RRM), 2016 WL 4544029, at *12 (E.D.N.Y. Aug. 30, 2016) (finding that evidence created "just months after the

hearing" and evidence "created more than a year after the ALJ's hearing" was relevant to the time period for which benefits were denied); *Madrigal v. Callahan*, No. 96 CIV. 7558 (SAS), 1997 WL 441903, at *8 (S.D.N.Y. Aug. 6, 1997) ("Even though the report was prepared almost one year after the close of administrative proceedings, it sheds new light on Plaintiff's condition."). Plaintiff's new evidence was produced from April 9, 2025, to August 25, 2025, all within a year of his decision on January 3, 2025. Thus, the evidence meets the first materiality requirement that it relate to the relevant period at issue.

The evidence is also probative and presents a reasonable possibility of influencing the Commissioner. When the new evidence suggests a claimant "had an impairment substantially more severe than was previously diagnosed," it "present[s] a reasonable possibility of influencing the Secretary to decide [the] application differently." *Lisa*, 940 F.2d at 44; *Carreto*, 2016 WL 4544029, at *11 (stating evidence is probative when it "bears on the severity" of a disability). Plaintiff's new evidence shows that his left ankle pain continued from the onset of the injury. R. 21. It also shows the pain was not responding to conservative treatment and eventually required surgery. R. 13-15, 23, 36, 43. An evaluating physician stated he "has gone through conservative care. He remains limited by the pain. He is not improving clinically. His continued pain and limited function substantiate the need for surgical intervention."[5] R. 23. The new evidence shows Plaintiff's left ankle impairment is more severe than previously diagnosed. Thus, it does present a reasonable possibility of influencing the Commissioner.

Further, evidence that could "substantially bolster the credibility of [the plaintiff's] subjective complaints" is both probative and presents a reasonable possibility of influencing the

[5] Plaintiff was evaluated by Dr. Allen Ferrucci. R. 23. While Dr. Ferrucci is not one of Plaintiff's treating physicians, it appears he did evaluate Plaintiff for a Respondent's Medical Exam to determine if Plaintiff's peroneal tendon tear was related to his work injury. *Id.*

Commissioner. *Lisa*, 940 F.2d at 44; *see also Carreto*, 2016 WL 4544029, at * 11 (stating that where a "credibility determination was based in part on test results not fully supporting [the plaintiff's] report of her symptoms," new "direct evidence . . . rais[es] the possibility that the ALJ would have come to a different conclusion."); *Sharpe v. Sullivan*, 802 F. Supp. 938, 942 (W.D.N.Y. 1992) (finding that evidence of surgery was "clearly probative" when "the ALJ based his decision at least in part on the lack of probative evidence supportive of Plaintiff's allegations and testimony regarding the severity and permanency of . . . pain"); *Espinar v. Shalala*, No. 94 CIV. 6849 (HB), 1995 WL 679236, at *2 (S.D.N.Y. Nov. 15, 1995) (holding that a surgery after the decision date "is new and material as it is probative on the issue of [the plaintiff's] credibility regarding his prior complaints of pain").

Plaintiff claims the ALJ wrongly discredited Plaintiff's testimony regarding his left leg. ECF No. 21 at 2, 19. The ALJ noted, that Plaintiff testified, among other things, that he could only sit for twenty minutes at a time and stand for fifteen to twenty minutes at a time. R. 66. The ALJ then stated Plaintiff was not credible because "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ discredited Plaintiff's testimony regarding his pain and determined Plaintiff could stand for six to eight hours at a time. R. 66, 70, 71. The supplemental evidence provided medical documents discussing Plaintiff's new diagnosis and subsequent surgery. R. 13-15, 39-40. Thus, the supplemental evidence is probative and presents a reasonable possibility of influencing the Commissioner, and Plaintiff's new evidence is material.

Plaintiff also has good cause for not submitting this evidence before. A plaintiff shows good cause for not submitting evidence when "some . . . unusual, unexpected, or unavoidable

circumstance beyond your control prevented you from informing us about or submitting the evidence earlier." 20 C.F.R. § 404.970(b)(3). A plaintiff shows good cause when the evidence did not exist prior to the decision date. *Lisa*, 940 F.2d at 44 (stating there is good cause where the plaintiff "could not have obtained the evidence during that proceeding."); *Sharpe*, 802 F. Supp. at 942 ("Plaintiff has shown good cause for failure to present this evidence earlier, since the surgery took place after the Secretary rendered his final decision."). Plaintiff's MRI, which diagnosed his ankle injury as a peroneal tear, and his surgery on his left ankle both occurred after the decision date. R. 13, 39. Thus, all of Plaintiff's evidence could not have been submitted sooner. Excluding the April 8 treatment note and the State of Connecticut Medical Examining Board's determination, the supplementary evidence Plaintiff submitted to the Appeals Council meets the criteria of § 404.970(a)(5) and § 416.1470(a)(5).

Accordingly, this case is remanded to the Commissioner to reevaluate Plaintiff's claims in light of the new evidence. Because of the Court's finding's above, it need not reach the merits of Plaintiff's remaining arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion.

**B. Plaintiff's Remaining Arguments**

Because the Court is remanding this matter for consideration of new evidence, it does not reach Plaintiff's remaining arguments because "upon remand and after a *de novo* hearing, [the ALJ] shall review this matter in its entirety." *Faussett v. Saul*, No. 3:18-CV-738 (MPS), 2020 WL 57537, at *5 (D. Conn. Jan. 6, 2020) (internal quotation marks omitted). *Justin F. v. Comm'r of Soc. Sec.*, No. 3:23-CV-1041 (SDV), 2024 WL 3633647, at *5 (D. Conn. Aug. 1, 2024) ("[B]ecause the case will be remanded for consideration of the new evidence, the Court does not reach plaintiff's other five claims of error.").

On remand, and after considering the new evidence, the ALJ shall consider the other claims of error not discussed in this decision. *Pacheco v. Saul*, No. 3:19-CV-00987 (WIG), 2020 WL 113702, at *8 (D. Conn. Jan. 10, 2020) ("On remand, the Commissioner will address the other claims of error not discussed herein.").

## IV. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Order Reversing the Decision of the Commissioner or Remanding **(ECF No. 20)** is **GRANTED** for the reasons set forth herein and Defendant's Motion for an Order Affirming the Decision of the Commissioner **(ECF No. 25)** is **DENIED**.

The Clerk of the Court is directed to enter judgment in favor of Plaintiff.

This is not a recommended ruling. The parties consented to the jurisdiction of the undersigned Magistrate Judge, who may therefore direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. ECF No 23. Appeals may be made directly to the appropriate United States Court of Appeals. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c). It is so ordered.

*/s/ Maria E. Garcia, USMJ*

Hon. Maria E. Garcia
United States Magistrate Judge